# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| DREAM CAPITAL MANAGEMENT LLC as Trustee for the DCFI NPN2 0215001 Trust, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Docket No. 2:21-cv-00173-NT<br>) |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee of the Residential Asset Securitization Trust 2006-A9CB, Mortgage Pass-Through Certificates, Series 2006-1 under the Pooling and Servicing Agreement dated July 1, 2006, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before me is the Defendant's motion for summary judgment ("**Def.'s Mot.**") (ECF No. 15). For the reasons stated below, the motion is **GRANTED**.

## FACTUAL BACKGROUND[1]

On April 6, 2006, Sheila and Dennis Hennessey executed and delivered to Mortgage Electronic Registration Systems, Inc., ("**MERS**") acting as nominee for Nation One Mortgage Company, Inc., ("**Nation One**") a mortgage (the "**First Mortgage**") purportedly securing a property located at 65 Wellwood Road in

---

[1] The following background is drawn from the parties' combined statements of fact ("**SOF**") (ECF No. 24) or directly from documents in the summary judgment record, which is found at ECF Nos. 14 and 20 (the "**Record**"). The Defendant objects to some of the Plaintiff's statements of fact. *See* SOF ¶¶ 12–18, 20–21. The Plaintiff has not responded to any of these objections. I need not address most of these objections because I do not rely on most of the statements of fact to which the Defendant objects. To the extent the Defendant's objections require resolution, I address them below.

Portland, Maine (the "**Property**"). Tr.'s Reply to Opposing Statement of Material Facts ("**SOF**") ¶ 1 (ECF No. 24); First Mortgage (ECF No. 14). In 2009, and again in 2010, MERS, acting as nominee for Nation One, executed assignments in an effort to assign the First Mortgage to OneWest Bank, FSB ("**OneWest**"). SOF ¶¶ 2–3.

In 2013, OneWest executed an assignment (the "**2013 Assignment**") in an effort to assign the First Mortgage to the Defendant, Deutsche Bank National Trust Company As Trustee For Residential Asset Securitization Trust Series 2006-A9cb Mortgage Pass-Through Certificates, Series 2006-I[2] ("**Deutsche Bank**"). SOF ¶ 4. In 2018, Mark Tribuna, an individual representing himself as the President of Nation One, executed a quitclaim assignment (the "**2018 Assignment**") in an effort to assign the First Mortgage to Deutsche Bank. SOF ¶ 5; 2018 Assignment (ECF No. 14-4).

Because one of the primary issues in this case is the validity of the 2018 Assignment—and because the validity of that document hinges on the ability of Nation One to execute it—I briefly go into the history of Nation One. In 2001, Nation One filed, pursuant to Chapter 156B of the Massachusetts General Laws ("**MGL**"), "Restated Articles of Organization"[3] in which the company stated that its purpose was "[t]o engage in mortgage generation and lending," as well as "[t]o do any and all

---

[2] The Complaint uses the name "Deutsche Bank National Trust Company, as Trustee of the Residential Asset Securitization Trust 2006-A9CB, Mortgage Pass-Through Certificates, Series 2006-1 under the Pooling and Servicing Agreement dated July 1, 2006." Compl. 1 (ECF No. 1-1). But the Defendant contends that its actual name is "Deutsche Bank National Trust Company As Trustee For Residential Asset Securitization Trust Series 2006-A9cb Mortgage Pass-Through Certificates, Series 2006-I." Trustee's Mot. for Summ. J. 1 (ECF No. 15).

[3] Nation One was originally formed under a different name in 1989, but that earlier history is not germane to the Defendant's motion. Articles of Organization 1, 5–6 (ECF No. 14-5).

acts and things a corporation may do under the provisions of Chapter 156B"; Restated Articles of Organization 1, 14 (ECF No. 14-6). This document was signed by Mark C. Tribuna as the Clerk of Nation One.[4] Restated Articles of Organization 13. On June 18, 2012, Nation One was dissolved by court order or by the Secretary of the Commonwealth of Massachusetts (the "**Secretary**"), SOF ¶ 8; Business Entity Information 1 (ECF No. 14-7), presumably because it failed to file with the Secretary its annual reports for the years 2007 through 2011, Business Entity Information 1, in violation of Massachusetts law.[5]

In 2007, the Hennesseys obtained a second mortgage on the Property (the "**Second Mortgage**"), which is now held by Plaintiff Dream Capital Management LLC as Trustee for the DCFI NPN2 0215001 Trust ("**Dream Capital**"). State Court Judgment of Foreclosure and Sale ("**JFS**") 1 (ECF No. 14-9). In 2017, a Maine state court issued a "Judgment of Foreclosure and Sale" on the Second Mortgage, granting Dream Capital the right to sell the equity of redemption—that is, the right to redeem the First Mortgage.[6] SOF ¶ 9; JFS 1, 3.

---

[4]  Mark C. Tribuna is also listed as the Treasurer and one of three Directors of Nation One. Restated Articles of Organization 13 (ECF No. 14-6). Charles C. Furtado also signed the filing as President of Nation One. Restated Articles of Organization 13.

[5]  Massachusetts law requires corporations to file an annual report with the Secretary of the Commonwealth (the "**Secretary**") within two and a half months of the end of the fiscal year and allows the Secretary to dissolve administratively any corporation that fails to do so for two or more consecutive years. *See* Mass. Gen. Laws ch. 156D, §§ 14.20, 16.22 (2022).

[6]  In an earlier order in a precursor to this case, I mentioned my skepticism as to "whether Dream Capital actually has valid title to the Property," as it had been asserting, "rather than the mortgagor's equity of redemption." *Dream Cap. Mgmt. LLC as Tr. for the DCFI NPN2 0215001 Tr. v. Deutsche Bank Nat'l Tr. Co., as Tr. of the Residential Asset Securitization Tr. 2006-A9CB, Mortg. Pass-through Certificates, Series 2006-1 under the Pooling & Servicing Agreement dated July 1, 2006*, Docket No. 2:19-cv-00560-NT, 2020 WL 7066313, at * 1 n.1 (citing *Prof-2014-S2 Legal Title Tr. II, by U.S. Bank Nat'l Ass'n v. Sidelinger*, Civil No. 2:19-CV-220-DBH, 2020 WL 6292742, at *5 (D. Me. Oct. 26, 2020) ("[I]n the case of a second mortgage foreclosure, the interest foreclosed on and the interest

3

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence 'is such that a reasonable jury could resolve the point in the favor of the non-moving party' . . . ." *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 93 (1st Cir. 2021) (quoting *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 7 (1st Cir. 2018)). "[A]nd a fact is 'material' if it 'has the potential of affecting the outcome of the case.' " *Id.* (quoting *Pérez-Cordero v. Wal-Mart P.R., Inc.*, 656 F.3d 19, 25 (1st Cir. 2011)). In reviewing a motion for summary judgment, I must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *EdgePoint Capital Holdings, LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50, 57 (1st Cir. 2021).

## ANALYSIS

The Plaintiff is seeking a declaratory judgment that the First Mortgage is invalid and that Dream Capital has clear title to the property. Compl. 6–7 (ECF No.

---

subsequently sold at a public sale is not the fee interest in the land . . ., but the mortgagor's equity of redemption, . . . [the] right to redeem the property from the first mortgagee . . . ." (alterations in original) (quoting *Brickyard Assocs. v. Auburn Venture Partners*, 626 A.2d 930, 933 (Me. 1993)))). "Indeed, the Judgment of Foreclosure and Sale issued by the State Court shows a handwritten amendment, presumably added by the Superior Court Justice who issued the order, which indicates that 'because the Dream Capital mortgage is a second mortgage,' Dream Capital only received the right to sell the 'equity of redemption,' not the mortgaged real estate." *Id.* Not only has the Plaintiff failed to address this issue or in any way assuage this concern, but it appears that the Plaintiff continues to assert—wrongly—that it holds title to the Property. *See* Mem. in Opp'n to Def.'s Mot. for Summ. J. ("**Pl.'s Opp'n**") 2 (ECF No. 22) ("This action seeks, by way of a declaratory judgment, to remove an encumbrance on title to the Property . . . ."); Compl. 7 ("[T]he Plaintiff prays that this Court . . . [a]djudge and declare that as a result of this Court entering Declaratory Judgment in favor of plaintiff, . . . plaintiff is and shall be the sole owner of the [Property] . . . .").

1-1). The way the Plaintiff sees things, neither the 2013 Assignment nor the 2018 Assignment is valid, *see* Opposing Statement of Material Facts ¶¶ 4–5 (ECF No. 21), so Deutsche Bank does not validly hold the First Mortgage. And so, the Plaintiff's argument goes, the First Mortgage should be wiped away. The Defendant does not appear to dispute that the 2013 Assignment is invalid but contends both that the 2018 Assignment is valid and that, even if it is not, Deutsche Bank has other ways that it can prove ownership rights to the mortgage. Def.'s Mot. 7–9.

## I.   Justiciability

Before evaluating these arguments, I tackle the parties' arguments pertaining to justiciability. The Defendant contends that there is no dispute—that is, no case or controversy—because it has not sought to enforce its rights in a foreclosure action. Def.'s Mot. 9–10. I understand this to be an argument that the Plaintiff's suit is not ripe for resolution. I disagree.

"The requirements for a justiciable case or controversy are no less strict in a declaratory judgment proceeding than in any other type of suit." *Penobscot Nation v. Frey*, 3 F.4th 484, 508 (1st Cir. 2021) (en banc) (quoting *Ala. State Fed'n of Labor v. McAdory*, 325 U.S. 450, 461 (1945)). "Although there is not 'the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not,' ' basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 916 F.3d 98, 111 (1st Cir. 2019) (internal citation omitted) (first

quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), and then *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). A claim is ripe for judicial resolution "only if the party bringing suit can show both that the issues raised are fit for judicial decision at the time the suit is filed and that the party bringing suit will suffer hardship if court consideration is withheld." *Lab. Rels. Div. of Constr. Indus. of Mass., Inc. v. Healey*, 844 F.3d 318, 326 (1st Cir. 2016) (internal quotation marks omitted).

The Defendant argues that the Plaintiff's claim is not ripe because the Defendant has not tried to foreclose on the First Mortgage. But that is not germane to the Plaintiff's concerns. The Plaintiff contends that the Defendant's allegedly invalid mortgage is a cloud on the Plaintiff's purported title and that the Plaintiff is the rightful owner of the Property. Compl. 6–7. The Plaintiff's claim is fit for judicial decision now because that alleged cloud on title currently exists. The Plaintiff's claim does not "involve[ ] uncertain and contingent events that may not occur as anticipated or may not occur at all." *Penobscot Nation*, 3 F.4th at 509 (quoting *Town of Barnstable v. O'Connor*, 786 F.3d 130, 143 (1st Cir. 2015)). The Plaintiff will also suffer hardship if court consideration is withheld (assuming the Plaintiff is right on the merits), since that alleged cloud on title will persist. This case is ripe for decision.

The Plaintiff also makes an argument that implicates justiciability concerns, contending that the Defendant has not established "its standing to enforce the" First Mortgage. Mem. in Opp'n to Def.'s Mot. for Summ. J. 7–9 ("**Pl.'s Opp'n**") 2 (ECF No. 22). This argument is perplexing because it is a plaintiff who must demonstrate

6

standing to bring a lawsuit. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) ("For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." (internal quotation marks omitted)); *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶ 7, 96 A.3d 700 ("Every plaintiff seeking to file a lawsuit in the courts must establish its standing to sue, no matter the causes of action asserted."). Because this is the Plaintiff's lawsuit, not the Defendant's, it does not matter whether Deutsche Bank would have standing to foreclose on the First Mortgage.[7]

## II.   The Validity of the 2018 Assignment

There is no dispute that Nation One was dissolved in 2012 or that it tried to execute the 2018 Assignment six years after this dissolution. What the parties dispute is the importance of this six-year delay.

To evaluate the propriety of Nation One's actions, I first must discern which aspect of Massachusetts law governs how long Nation One had to wind up its affairs.[8]

---

[7]    For similar reasons, the Plaintiff's invocation of laches is puzzling. The Plaintiff argues that because Deutsche Bank has not acted to secure a valid assignment of the First Mortgage that Deutsche Bank cannot now assert an ownership interest in that mortgage. That makes little sense. "[L]aches bars assertion of a claim where a party[ ] delay[s] in bringing [a] suit." *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 911 (1st Cir. 1989). That is, laches comes into play where a litigant has "negligent[ly] or willful[ly] fail[ed] to assert his rights." *Dobson v. Dunlap*, 576 F. Supp. 2d 181, 187 (D. Me. 2008). But it is Dream Capital that has haled Deutsche Bank into court, not the other way around. In the context of the validity of the First Mortgage (the only context that matters for purposes of this motion), Deutsche Bank has not shied away from its contention that it believes it is the owner. To be sure, Deutsche Bank's failure to foreclose on the Property might inhibit its ability to foreclose on the Property in the future. But that has nothing to do with the Defendant's ability to defend itself from the Plaintiff's attempts to invalidate Deutsche Bank's ownership interest in the First Mortgage.

[8]    Confusingly, the Plaintiff seems to assert (as somewhat of an aside) that Maine law should govern this case because of the choice of law provision in the First Mortgage. Pl.'s Opp'n 7. The body of law governing the First Mortgage is irrelevant. What matters here is the law that governs the corporate affairs of Nation One, a Massachusetts corporation. Massachusetts law is the relevant guidepost.

Although Nation One was formed pursuant to Chapter 156B, all 156B corporations became governed by the Massachusetts Business Corporation Act ("**MBCA**") (housed within Chapter 156D of the MGL) as of July 2004. *Spenlinhauer v. Spencer Press, Inc.*, 959 N.E.2d 436, 439 (Mass. App. Ct. 2011); *see* Mass. Gen. Laws ch. 156D, § 17.01 (2022)(1).[9] The MBCA provides that a dissolved corporation (like Nation One) "continues its corporate existence but may not carry on any business except such as is necessary in connection with winding up and liquidating its business and affairs." Mass. Gen. Laws ch. 156D, § 14.05(a) (2022). For example, a dissolved corporation can "dispos[e] of its properties" or "do[ ] every other act necessary to wind up and liquidate its business and affairs." *Id.* § 14.05(a)(2), (5). This is because dissolution does not "transfer title to the corporation's property." *Id.* § 14.05(b).

The Plaintiff points to various cases and statutes to explain why it believes Nation One was required to wrap up its affairs within three years. Pl.'s Opp'n 5–6. But all of the Plaintiff's statutory citations are from Chapter 155 of the MGL, which expressly states that it does not apply to "corporations subject to chapter 156B or chapter 156D" like Nation One. Mass. Gen. Laws ch. 155, § 1 (2022); *see Boyle v. Zurich Am. Ins. Co.*, No. MICV2011-02244, 2013 WL 5317451, at *4 (Mass. Superior

---

[9] Chapter 156D does carve out some types of corporations from its scope, such as "corporations organized for the purpose of carrying on the business of a bank, savings bank, co-operative bank, trust company, credit union, surety or indemnity company, or safe deposit company." Mass. Gen. Laws ch. 156D, § 17.01(1) (2022). The Plaintiff halfheartedly argues that Nation One falls within one of these exceptions because, it contends, "Nation One clearly considered itself a mortgage lender and commercial and residential mortgage banking was its stated purpose." Pl.'s Opp'n 7. But although Nation One did organize itself as a mortgage lender, because it was organized pursuant to Chapter 156B, it was not organized as a bank under Massachusetts law. *See* Mass. Gen. Laws ch. 167, § 1 (2022) (defining a "[b]ank" as "any association or corporation chartered by the commonwealth under chapter 168, 170, 171 or 172, or . . . doing a banking business in the commonwealth subject to the supervision of the commissioner [of banks]").

8

Ct. Sept. 24, 2013) ("Although the prior business corporation statute provided that dissolved corporations generally have only three years to wind up their affairs, that provision has been superseded by G.L. c. 156D, § 14.05 . . . which does not impose such a three-year limitation." (internal citation omitted)). Moreover, all of the case law that the Plaintiff cites predates the enactment of the MBCA. *See* Pl.'s Opp'n 5–6 (citing cases from 2001, 1956, 1950, 1924, 1915, and 1861).

The Plaintiff scoffs at the idea that Chapter 156D might "have the effect of creating an eternal corporation with the power to transfer assets or divest itself of any residual interest in an asset, including a Mortgage, in perpetuity." Pl.'s Opp'n 6–7. While that might seem implausible, the Plaintiff fails to identify any temporal limitation in Massachusetts law. And there are numerous aspects of the MBCA that cast doubt on the Plaintiff's position. For example, the commentary to § 14.05 makes clear that the MBCA "expressly reverses all of these common law attributes of dissolution" (that is, those attributes on which the Plaintiff relies) "and makes clear that the rights, powers, and duties of shareholders, the directors, and the registered agent are not affected by dissolution." Mass. Gen. Laws ch. 156D, § 14.05 cmt. In addition, Massachusetts law seems to indicate that administratively dissolved corporations are not abolished but rather lie in a dormant state with the ability to be revived at any moment. *Id.* § 14.22(c) (providing that when an administratively dissolved corporation is reinstated, that "reinstatement relates back to and takes effect as of the effective date of the administrative dissolution and the corporation resumes carrying on its business as if the administrative dissolution had never

9

occurred . . . and with all acts and proceedings of its officers, directors and shareholders, acting or purporting to act as such, which would have been legal and valid but for such dissolution, standing ratified and confirmed"). It thus seems entirely consistent with the statutory scheme of the MBCA that an administratively dissolved corporation *can* hold onto its assets (or sell them off) for lengthier periods of time.

The Plaintiff also tries to discredit the 2018 Assignment by questioning the authority of its signor, Mark C. Tribuna, to assign the First Mortgage. That is, the Plaintiff contends that there is no evidence that Mr. Tribuna had the authority to execute the 2018 Assignment.[10] But this flips Massachusetts law on its head. The Defendant is not required to introduce evidence that Mr. Tribuna had the authority to execute the 2018 Assignment because Massachusetts law presumes the validity of an assignment of a mortgage executed before a notary public "by a person purporting to" be an officer "of the entity holding such mortgage, or otherwise purporting to be an authorized signatory for such entity." Mass. Gen. Laws ch. 183, § 54B (2022); *Galvin v. U.S. Bank, N.A.*, 852 F.3d 146, 158 (1st Cir. 2017) ("Under Massachusetts law, as long as the assignor is the record holder of the mortgage at the time of the assignment . . . an assignment that complies with the statute governing mortgage assignments . . . 'cannot be shown to be void' " (quoting Mass. Gen. Laws ch. 183,

---

[10] In support of this argument, the Plaintiff points to what it represents is Mark C.Tribuna's LinkedIn profile. Mark C. Tribuna LinkedIn Profile (ECF No. 20-3). The Defendant objects that this is inadmissible hearsay, and the Plaintiff offers no rejoinder. I agree, and I do not consider this piece of evidence.

§ 54B)). Because the 2018 Assignment was executed before a notary public by a person (Mr. Tribuna) purporting to be an officer (the president) of Nation One, it is presumed to be valid, and the Plaintiff has offered no admissible evidence to rebut that presumption.

Even if I were to accept the Plaintiff's contention that Mr. Tribuna was no longer an officer of Nation One in 2018 and could not have acted in that capacity, § 54B would still tie my hands. *See In re Marron*, 485 B.R. 485, 490 (D. Mass. 2012) ("Even if the individual who executed the mortgage assignment on behalf of [the assigning entity] lacked the authority to do so, the assignment was still binding on [the assigning entity] because § 54B requires only that the signatory 'purport' to be authorized."); *Rosa v. Mortg. Elec. Sys., Inc.*, 821 F. Supp. 2d 423, 430 (D. Mass. 2011); *Lindsay v. Wells Fargo Bank, N.A.*, Civ. A. No. 12-11714-PBS, 2013 WL 5010977, at *14–15 (D. Mass. Sept. 11, 2013) ("As long as [the signor] purported to be a qualified representative of [the assigning entity] before a notary public, the assignment was valid under section 54B notwithstanding plaintiff's argument to the contrary based on [the signor's] LinkedIn profile."). Pursuant to § 54B, an officer who acts beyond his authority does not make a contract *void* but only *voidable*. *Galvin*, 852 F.3d at 158.

For the reasons discussed above, I find that the 2018 Assignment validly transferred the First Mortgage from Nation One to Deutsche Bank. As a result, the Defendant is entitled to summary judgment.[11]

---

[11] I make one final observation. In my earlier order, I "note[d] the odd fit between the Plaintiff's theory of liability and its claim for relief." *Dream Capital*, 2020 WL 7066313, at *4 n.6. That is, I pointed out that invalidating Deutsche Bank's ownership interest in the First Mortgage would not mean that the First Mortgage would disappear and leave Dream Capital with clear title to the

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendant's motion for summary judgment (ECF No. 15).

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 17th day of May, 2022.

---

Property. *Id.* Even if Deutsche Bank does not own the First Mortgage, *someone* does, seemingly Nation One. Dream Capital continues to turn a blind eye to this flaw in its legal theory. Even if I were to find that the 2018 Assignment were invalid, I see no way in which the Plaintiff would be entitled to the declaratory judgments that it seeks.